IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JANICE NOTTENKAMPER, derivatively on behalf of ITT EDUCATIONAL SERVICES, INC., <br>     Plaintiff, <br><br> v. <br><br> KEVIN M. MODANY, DANIEL M. FITZPATRICK, JOHN F. COZZI, JOHN E. DEAN, JAMES D. FOWLER, JR., JOANNA T. LAU, THOMAS I. MORGAN, SAMUEL L. ODLE, VIN WEBER, JOHN A. YENA and LLOYD G. WATERHOUSE, <br><br>     Defendants, <br> and <br><br> ITT EDUCATIONAL SERVICES, INC., <br><br>     Nominal Defendant. | Civil Action No. 14-672-GMS |

## MEMORANDUM OPINION

### I. INTRODUCTION

On May 27, 2014, plaintiff Janice Nottenkamper ("Nottenkamper"), on behalf of ITT Educational Services, Inc. ("ITT"), filed a derivative action against the above-captioned defendants, who are certain members of ITT's Board of Directors and executive officers (collectively, the "Defendants"). (D.I. 1.) Nottenkamper alleges claims for breach of fiduciary duty, abuse of control, unjust enrichment, and gross mismanagement. (*Id.*) On January 13, 2015, the Defendants filed a motion to transfer this case to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a). (D.I. 11.) For the reasons that follow, the court will grant the Defendants' motion.

## II. BACKGROUND

This is the third lawsuit to be filed concerning similar facts and circumstances relating to corporate management of ITT. Two prior lawsuits, one securities class action (the "Securities Action") and one derivative action (the "New York Derivative Action"), were filed in the Southern District of New York in 2013.[1] Both of those cases are currently pending before Judge J. Paul Oetken.

As described in the Complaint, Nottenkamper is a current shareholder of ITT and has held ITT stock since 1994. (D.I. 1, ¶ 35.) She is a citizen of Arkansas. (*Id.*) ITT is a Delaware corporation with its principal executive offices located in Indiana. (*Id.* ¶ 36.) ITT provides accredited, technology-oriented undergraduate and graduate degree programs through ITT Technical Institutes and Daniel Webster College. (*Id.*) Nottenkamper alleges claims of breach of fiduciary duty, abuse of control, unjust enrichment, and gross mismanagement against the Defendants.

## III. STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404. This provision affords district courts "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3rd Cir. 1995). In this assessment, the court undertakes a two-step inquiry to determine whether a motion to transfer should be granted. First, the court must

---

[1] The Securities Action was later consolidated into the action *In re ITT Educational Services, Inc., Securities Litigation*, No. 13-cv-1620-JPO (S.D.N.Y. filed Mar. 11, 2013). The New York Derivative Action is *Sasha Wilfred ex rel. ITT Educational Services, Inc. v. Modany, et al.*, No. 13-cv-3110-JPO (S.D.N.Y. filed May 8, 2013).

2

establish whether the action is one that could have originally been brought in the proposed transferee forum. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3rd Cir. 1970). Second, the court must then weigh whether transfer would best serve the interests of convenience and justice. *See Jumara*, 55 F.3d at 879. The burden rests on the defendant to show that transfer is appropriate at each step. *Id.* (citing *Shutte*, 431 F.2d at 22). "Unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.3d at 25 (citing *Owatonna Mfg. Co. v. Melore Co.*, 301 F. Supp. 1296, 1307 (D. Minn. 1969)).

## IV. DISCUSSION

### A. The Propriety of the Transferee Forum

The proposed transferee forum must be one in which the action might have originally been brought. 28 U.S.C. § 1404(a). Accordingly, the court may only grant the Defendants' motion to transfer if "the transferee court (1) would have been a proper venue and (2) would have had personal jurisdiction over the defendant had the case been filed there initially." *See* 15 Wright and Miller, Federal Practice and Procedure § 3841 (4th ed. 2014) (citing *Hoffman v. Blaski*, 363 U.S. 335 (1960)). The parties do not appear to dispute that Nottenkamper's lawsuit could have originally been filed in the Southern District of New York.[2] As such, the court proceeds to the second step to analyze the relevant interests at stake.

### B. The *Jumara* Analysis

The court must next consider whether transferring this action to the Southern District of New York would serve the interests of convenience and justice. *See Mitel Networks Corp. v. Facebook, Inc*, 943 F. Supp. 2d 463, 468 (D. Del. 2013). The Third Circuit has instructed that courts should perform a case-by-case analysis, rather than apply a "definitive formula." *See*

---

[2] Nottenkamper's brief hints that jurisdiction in the Southern District of New York would not be proper, but fails to elaborate further. (D.I. 26 at 7.) Thus, there is no clear challenge to the propriety of the transferee forum.

3

*Jumara*, 55 F.3d at 879. This assessment should take into account the various public and private interests protected and defined in § 1404(a). The private interests may include:

> [P]laintiff's forum preference as maintained in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (internal citations omitted). The public interests may include:

> [T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (internal citations omitted). The *Jumara* analysis is not limited to these explicitly enumerated factors, and no one factor is dispositive. *See id.* at 879. The court addresses each of these "*Jumara* factors" in turn.

### 1. Private Interest Factors

#### a. *Plaintiff's Forum Preference*

The first private interest factor is the "plaintiff's forum preference as manifested in the original choice." *Id.* at 879. The Defendants argue that Nottenkamper's choice of forum is entitled to little deference because this is a derivative action. (D.I. 12 at 10.) Conversely, Nottenkamper contends that the present forum is proper because ITT is incorporated in Delaware, and that her choice of forum "should not be lightly disturbed." (D.I. 26 at 12 (quoting *Jumara*, 55 F.3d at 879).)

4

The court agrees with the Defendants. It has long been recognized that, in a shareholder's derivative suit, an individual plaintiff's forum preference is entitled to little weight.

> Where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate . . . is considerably weakened. . . .
> . . . . [I]n derivative actions, although the plaintiff may have a substantial interest of his own to protect, he may also be a mere phantom plaintiff with interest enough to enable him to institute the action and little more.

*Koster v. (Am.) Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524–25 (1947); *see also Weisler v. Barrows*, No. 06-362-GMS, 2006 WL 3201882, at *3 (D. Del. Nov. 6, 2006) ("[I]n a shareholder's derivative suit, a plaintiff's choice of forum is entitled to little weight. . . . ); *Blender v. Sibley*, 396 F. Supp. 300, 302 (E.D. Pa. 1975) ("Although a plaintiff's choice of forum normally is a paramount consideration in any determination of a request to transfer, far less weight is accorded that factor in a derivative suit or class action." (internal citations omitted)). Here, there is no indication that Nottenkamper has any particular personal interest that would entitle her choice of forum to special weight.

Moreover, even under a more traditional analysis of plaintiff's choice of forum, Nottenkamper's preference would not be entitled to "paramount" consideration. *See Shutte*, 431 F.2d at 25. Nottenkamper's only justification for litigating in Delaware is that ITT is a Delaware corporation. But it is a corporate entity's actual, physical location—and not its state of incorporation—that is the driving factor in the transfer analysis. *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 11-400-GMS, 2013 WL 105323, at *3 (D. Del. Jan. 7, 2013) ("The court . . . recognizes that, when a plaintiff chooses to bring an action in a district where it is not physically located, its forum preference is entitled to something less than . . . paramount

5

consideration."). Although ITT is incorporated in Delaware, its principle place of business is in Indiana. *See Mitel*, 943 F. Supp. 2d at 469 ("[T]he fact that Delaware is not home to [plaintiff's] principal place of business reduces somewhat the weight this factor is accorded.").

Consequently, under either analysis, plaintiff's choice of forum—while weighing against transfer—is not entitled to significant deference.

### b. *Defendant's Forum Preference*

The second private interest factor is the defendant's choice of forum. *Jumara*, 55 F.3d at 879. When evaluating the defendant's choice of forum, the court examines whether the defendant can articulate rational, legitimate reasons to support that preference. *Pragmatus AV, LLC v. Yahoo! Inc.*, No. 11-902-LPS-CJB, 2013 WL 4629000, at *8 (D. Del. Aug. 28, 2013). Defendants have articulated rational reasons for their preferred forum: the two earlier-filed, related actions currently pending in the Southern District of New York. The Defendants contend that litigating all of the actions in a single district would save significant time and expense, as well as avoid the risk of inconsistent judgments. (*Id.*) Nonetheless, the Defendants' preference cannot alone displace Nottenkamper's own choice. *See Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755 (D. Del. 2012) ("Under Third Circuit law, Defendants' preference for an alternative forum is not given the same weight as Plaintiff's preference.") Thus, this factor weighs slightly in favor of transfer.

### c. *Whether the Claim Arose Elsewhere*

The third private interest factor the court must consider is "whether the claim arose elsewhere." *Jumara*, 55 F.3d at 879. The Defendants are correct that the Third Circuit test examines the location of those "events or omissions giving rise to the claim" and not "the defendants contacts with a particular district." *See Cottman Transmission Sys. Inc. v. Martino*, 36

F.3d 291, 294 (3d Cir. 1994). The parties agree that the Defendants' alleged misconduct did not take place in either Delaware or New York. Consequently, this factor is neutral.

### d. *Convenience of the Parties*

The court must also determine whether the proposed transferee forum would be more convenient for the parties. *See Jumara*, 55 F.3d at 879. In making this determination, the court is to consider the relative physical and financial condition of the parties. *Id.* It is not disputed that none of the parties are physically located in Delaware or New York. Yet, although the Defendants do not reside in New York, they are currently litigating there. Thus, the court agrees that the Southern District of New York is more convenient for them versus the District of Delaware. Conversely, there is no convenience to Nottenkamper in litigating in Delaware. Consequently, this factor weighs in favor of transfer.

### e. *Convenience of Witnesses*

The court must also consider the convenience of the witnesses. *See Jumara*, 55 F.3d at 879. The weight of this factor is limited to the extent that a witness would actually be unavailable for production in one of the fora—*i.e.*, non-party witnesses beyond the subpoena power of the district. *Id.*; *see also Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). The parties do not specify any non-party witnesses who would be unavailable in one forum versus the other. Consequently, this factor is neutral.

### f. *Location of Books and Records*

Finally, the court must consider the location of books and records. *See Jumara*, 55 F.3d at 879. The location of books and records is also limited to the extent that documentary evidence would actually be unavailable for production in one of the fora. *Id.* The court is aware, as Nottenkamper points out, that advances in technology makes production of documents in two

7

locations easier than it may have been in the past. This factor, however, still requires consideration. *See Mitel*, 943 F. Supp. 2d at 474 ("Though modern technology makes the task of transporting electronic evidence far less onerous, the court must nevertheless accord at least some weight to this factor.") Although it does not appear that books and records would be unavailable for production in Delaware, the fact that many of the documents will already be produced in the Southern District of New York in the related matters means that transfer would ease the Defendants' burden of production. Consequently, this factor weighs slightly in favor of transfer.

### 2. Public Interest Factors

The parties limit their briefing on the public interest factors to practical considerations and the local interests in resolving the issues. The parties do not address or do not dispute the remainder of the factors. For simplicity, the court will mirror the parties' briefing and limit its analysis to the factors raised therein.

#### a. *Practical Considerations*

Courts should look to "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Defendants contend that transferring this action to the Southern District of New York would achieve these benefits because: (1) transfer would avoid duplicative litigation, since two related issues are already pending in the Southern District of New York; (2) it would prevent unnecessary expenses and inconsistent rulings; and (3) it is in the best interests of ITT. (D.I. 12 at 13.) In response, Nottenkamper does not challenge the substance of the Defendants' efficiency arguments, but argues that such arguments are overstated and stale because of the Defendants' delay in seeking transfer. (D.I. 26 at 16.)

The court agrees with the Defendants that the co-pending related lawsuits in the Southern District of New York weigh in favor of transfer. *See Cont'l Grain Co. v. Barge FBL-585*, 364

U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."); *see also Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, No. 12-462-GMS, 2012 WL 3777423, at *7 (D. Del. Aug. 30, 2012); *Intellectual Ventures I*, 842 F. Supp. 2d at 759. Here, there are two related lawsuits pending in the Southern District of New York, including another derivative action. Transferring the case would allow the related derivative actions to be tried within the same district, in front of the same judge, minimizing the potential for repetitive litigation and inconsistent judgments. *See Weisler*, 2006 WL 3201882 at *3 ("Where related lawsuits exist, it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court.")

The court is not persuaded by Nottenkamper's argument that any benefits of efficiency "are now wasted due to Defendants' own dilatory actions." (D.I. 26 at 16.) Although perhaps the Defendants could have sought transfer sooner, the court is not convinced that the benefits of transfer have been lost—interests in efficiency can be attained, even still. *See MoneyCat Ltd v. PayPal Inc.*, No. 13-1358, 2014 WL 2042699, at *3 (D. Del. May 15, 2014) ("Thus, while the transfer motion could have been filed earlier, it is not so late that transfer will substantially delay the litigation of this matter.") The case remains in its infancy: the Defendants have not yet answered the Complaint, no scheduling order has been entered, and no formal discovery has been conducted. It cannot be said that the transfer would substantially delay the litigation in this matter. Therefore, the Defendants' timing in filing the motion to transfer was not improper. Practical considerations weigh strongly in favor of transfer.

    b. *Local Interest in the Litigation*

9

Next, the court considers "the local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. The parties are in agreement that the Southern District of New York is capable of applying Delaware law. Nottenkamper, however, argues that Delaware has a great interest in deciding this case, since it involves "classic principles of Delaware law." (D.I. 26 at 16.) Nottenkamper relies on the fact that ITT is a Delaware corporation and asserts that, as a result, Delaware has a significant interest in overseeing this action. (*Id.* at 16-17.) The court disagrees. As the Defendants point out, the Southern District of New York is very capable of applying Delaware fiduciary law. Moreover, there is no suggestion that this case implicates complex questions of Delaware law that cannot be properly addressed by the Southern District of New York. Therefore, Delaware does not have any special interest in this case that would weigh against a transfer. Thus, the court finds that this factor is neutral.

## C. **Transfer Analysis Summary**

Considering the *Jumara* factors as a whole, the court concludes that the Defendants have met their burden of demonstrating that the interests of justice and convenience strongly favor transfer. Only Nottenkamper's forum preference weighs against transfer, and, as the court explained, her preference does not warrant considerable deference. In contrast, practical considerations of efficiency strongly favor transfer to the Southern District of New York. All other factors are neutral or also slightly favor transfer.

## V. **Conclusion**

For the reasons discussed above, the court will grant Defendants' Motion to Transfer. (D.I. 11.) This action is transferred to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a).[3]

---

[3] The court declines to rule on the Defendants' pending motion to dismiss. (D.I. 8.) These arguments can be raised before the transferee judge.

10

Dated: April 29, 2015

_____
UNITED STATES DISTRICT JUDGE